## Nason Estate

*George W. Thompson* and *Henry C. Beerits*, for accountants.

*Donald M. McCurdy*, for Commonwealth.

VAN RODEN, P. J., September 15, 1966.—Decedent died December 3, 1964, survived by his spouse and by three adult children. . . .

By his will and codicil, decedent bequeathed his tangible personal property unto his wife; bequeathed 100 shares of Sun Oil Company common stock to his grandson in trust during such grandson's minority. . . .

The executors' statement of proposed distribution in the present matter raises the interesting question whether a legatee of stock is entitled to a five percent stock dividend received by the executors. The question arises from the following facts.

Decedent owned 720 shares of the common stock of Sun Oil Company at the time of his death on December 3, 1964. Prior to his death, the board of directors of said company declared a five percent stock dividend, which was payable on December 10, 1964, to stockholders of record on October 30, 1964.

Under Section fifth of his will, decedent provided:

"I give and bequeath one hundred (100) shares of the common stock of Sun Oil Company to my grandson, Peter N. Corriston, if he survives me".

Said grandson survived decedent, but was a minor at the time of his death. In accordance with Section fifth of decedent's will, the shares of stock are to be held in trust for said grandson until he attains his majority. The balance of the Sun Oil Company shares formed part of the residue of decedent's estate.

Of the 36 shares of Sun Oil Company stock which the executors received as a stock dividend, five shares were attributable to ownership of the shares bequeathed in trust to decedent's minor grandson. The executors have taken the position, in which this court concurs, that these five shares should be awarded to the grandson as income from the shares held in trust.

Although in Pennsylvania it is well settled that a cash dividend received by an estate of a shareholder who was alive at the record date, but who predeceased the payment date, must be allocated to the principal of the estate; see Opperman's Estate (No. 1), 319 Pa.

455 (1935), there is a question how a stock dividend would be treated when received under similar circumstances. Whereas declaration of a cash dividend creates a debtor-creditor relationship between the corporation and shareholder as of the record date, declaration of a stock dividend does not in itself vest any rights in the shareholder, because precedent conditions and other formalities must be complied with before the dividend can be paid. See Staats v. Biograph Co., 236 Fed. 454 (2d Cir., 1916), and Terry v. Eagle Lock Co., 47 Conn. 141 (1879).

The Pennsylvania case of Dock v. Schlichter Jute Cordage Co., 167 Pa. 370 (1895), is not in conflict with this principle of corporation law, even though in that case the court held that declaration of a stock dividend vested rights in the shareholders which could not later be rescinded. This is because in Dock, the company had used retained earnings to purchase some of its stock which it then held as treasury stock, and no further corporate formalities were necessary to the issuance of the stock certificates. The difference between the type of stock at issue in Dock and in Terry was an important distinguishing feature referred to in the master's report of the former case, and that report was approved per curiam by the Pennsylvania Supreme Court.

On the basis of the foregoing, the court concludes that since no rights were vested in decedent at the time of his death, the Sun Oil Company stock dividend should not be deemed part of the original principal of the estate. This conclusion is not altered by section 5(6) of the Principal and Income Act of July 3, 1947, P. L. 1283, which states:

"(6) In applying this section, the date when a dividend accrues to the person who is entitled to it shall be held to be the date specified by the corporation as the one on which the stockholders entitled thereto are de-

termined, or in default thereof, the date of declaration of the dividend".

In the opinion of this court, the Principal and Income Act was intended to govern the problem of allocation between an income beneficiary and remaindermen, rather than the problem of allocation between different classes of legatees.

Neither is the stock dividend an after-acquired asset of the estate. By virtue of the common law six percent stock dividend rule enumerated in Pew Trust, 411 Pa. 96, the Sun Oil Company stock dividend must be deemed income.

However, the issue is whether the income is distributable to the legatee of the stock or to the residuary legatees. Although it is clear that the stock bequest to decedent's grandson was general, see McFerren Estate, 365 Pa. 490 (1950), and that a general legatee is not entitled to cash dividends declared until one year after testator's death, Watson Estate, 15 Fiduc. Rep. 120 (O. C. Luzerne Co., 1964), where the legacy is, in fact, in trust, as in the present case, section 753-(a) of the Fiduciaries Act of April 18, 1949, P. L. 513, suggests, by analogy, that income received within the first year of administration is distributable to the beneficiary of the trust. Despite the fact that the trust provisions and the general legacy of stock to decedent's grandson are in two separate sections of decedent's will, nevertheless, it seems appropriate to treat the legacy as a legacy in trust and to apply to it aforesaid provisions of the Fiduciaries Act. See Norvell's Estate, 71 Pitts. L. J. 687 (O. C., Allegheny Co., 1923).

Accordingly, it is the ruling of this court that the five percent stock dividend received by the executors in the 100 shares of Sun Oil Company bequeathed in trust for Peter N. Corriston, during his minority, constitutes income and is distributable as such by the trustees of said trust. . . .